FILED

DEC 10 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

IN THE NORTHERN DISTRICT COURT
CALIFORNIA

JOHANNA R. WHEELER )

Plaintiff, )

Vs. )

CARRINGTON MORTGAGE SERVICES LLC, )

Defendant. )

CASE NO.

DMR

CV19- 8077

JUDGE _____

---

### COMPLAINT AND REQUEST FOR IMMEDIATE AND PERMANENT INJUNCTIVE RELIEF RELATIVE TO FRAUDULENT CHAIN OF TITLE AND ILLEGAL FORECLOSURE

---

NOW COMES PLAINTIFF in pursuit of Justice and the right to Due Process to file this Complaint and Request for immediate Injunctive Relief. Plaintiff, subject to Sworn Oath and Threat of Perjury as to all factual allegations, hereby solemnly avers:

### PARTIES

1. At all times relevant herein, Plaintiff was a female over the age of 18 residing at 36 Ruth Avenue, Hampden, ME 04444.

2. Carrington Mortgage Services (Carrington) is a California Corporation, a subsidiary of and affiliate of Wells Fargo, doing business in California, purporting to have authority as Servicer to foreclose on Plaintiff's home.

1

## JURISDICTION

3.    Defendant is headquartered in Anaheim, California and conducts substantial business in that area and throughout the United States. The amount in controversy exceeds $75,000.00 with substantial certainty.

## FACTS

4.    On or about May 19, 2008, Plaintiff executed a Note and Mortgage on the property with Taylor, Bean & Whitaker. Significantly, neither MERS nor MERSCOPRP are noted anywhere on said Mortgage. (Appendix A).

5.    Taylor, Bean & Whitaker was raided by the FBI in or about August of 2009 for corruption and its Chairman, Lee Farkas, was subsequently sentenced to 30 years in prison for his mastermind role in orchestrating lending fraud schemes at the country's 5th largest Mortgage House.

6.    Thereafter, MERS purportedly assigned the Mortgage to Bank of America, N.A. on or about June 14, 2012, using "all beneficial interest," i.e. Beneficiary Status. (Appendix A).

7.    MERS had absolutely **no authority** whatsoever to assign anything to anyone because it could not legally possess true ownership interest in the Note.

8.    The Note **must** travel with the Mortgage.

9.    Subsequently, Taylor, Bean & Whitaker appears in an October 4, 2017, purported Quitclaim Assignment to Defendant, Carrington, illegally and falsely claiming MERS as the "Mortgagee." (Appendix A).

10.   Such activity led noted New England Foreclosure Defense Attorney, Thomas Cox, Esq., to write:

11.

   "With this being a Taylor, Bean Whitaker loan using a MERS mortgage, they have a problem. The two assignments, from MERS to B of A, and then from B of A to Carrington, are insufficient to get ownership of the mortgage, and thus standing to foreclose, to Carrington." (Appendix B)

12.     Taylor, Bean & Whitaker was a notoriously corrupt company, whose front

man was convicted in a $2.9 billion mortgage scam, according to the U.S.

Department of Justice:

https://www.justice.gov/opa/pr/former-chairman-taylor-bean-whitaker-convicted-29-billion-fraud-scheme-contributed-failure

According to court documents and evidence presented at trial, the fraud
scheme began in 2002, when Farkas and his co-conspirators ran
overdrafts in TBW bank accounts at Colonial Bank in order to cover
TBW's cash shortfalls.  Farkas and his co-conspirators at TBW and
Colonial Bank transferred money between accounts at Colonial Bank to
hide the overdrafts.  Evidence presented at trial showed that after the
overdrafts grew to more than $100 million, Farkas and his co-
conspirators covered up the overdrafts and operating losses by causing
Colonial Bank to purchase from TBW over time more than $1.5 billion in
what amounted to worthless mortgage loan assets, including loans that
TBW had already sold to other investors and fake pools of loans
supposedly being formed into mortgage-backed securities.  Farkas and
his co-conspirators caused Colonial Bank to report these assets on its
books at face value, when in fact the mortgage loan assets were
worthless.  By August of 2009, approximately $500 million in fake pools
of loans remained on Colonial Bank's books.

13.     As such, the purported mortgage loan is already presumptively fake.  This

is compounded by the fact that a current MERS lookup on the purported

loan indicates that it is owned by Bank of America, who has, of course, not

allegedly owned it since the phony Quitclaim Assignment noted herein.

14.     A Complaint for foreclosure was filed by Attorney Molly McGuire on or

about April 23, 2018.

15.     Plaintiff received a Summons on or about May 10, 2018, and she

responded to the Complaint with a responsive pleading on or about May

24, 2018.

16.     The case was subsequently referred to Mediation Diversion on or about

May 31, 2018.

17.     Whereupon Plaintiff and Defendant were allegedly engaged in HAMP

negotiations at times relevant to this with Defendant (before calling her

3

an "idiot" – more on this later), falsely informing her that "*All foreclosure activity is on hold while your RMA application is in review so you do not need to worry.*"  See below a direct cut-and-paste of an August 6, 2018, email:

**********

---------- Forwarded message ---------
From: Alicia Herrera <Alicia.Herrera@carringtonms.com>
Date: Mon, Aug 6, 2018 at 4:49 PM
Subject: RE: 6000003477
To: Johanna Athas <jwemt81@gmail.com>
Cc: aliciaacevedo618@gmail.com <aliciaacevedo618@gmail.com>

Can you send the application to aliciaacevedo618@gmail.com?  All
foreclosure activity is on hold while your RMA application is in review so you
do not need to worry.

All documentation related to an application for assistance should be sent
to MortgageAssistance@CarringtonMS.com

Thank you,

Alicia Acevedo – NMLS ID # 1064915
Home Retention Department Specialist
Carrington Mortgage Services, LLC NMLS ID # 2600
1600 South Douglass Road, Suite 110 & 200-A Anaheim, CA 92806
Phone: 800-561-4567
Document Processing Fax: 877-267-1331
Email: Alicia.Herrera@carringtonms.com

18.    To the contrary, facts will show that Defendant continued attempts at
       foreclosure by way of unlawfully Dual-Tracking this very hard-working
       family, even as complete RMA packages were submitted on June 30, 2018,
       August 30, 2018, May 8, 2018, June 20, 2019, and on August 6, 2019.

19.    Defendant initially failed to even provide a reliable access fax number for
       document submissions or a single point of contact, repeatedly falsely
       claimed that they lost documents, and falsely claimed that they did not
       receive documents.[1]

---

[1] The Court may take Judicial Notice of the fact that Ohio's Attorney General Richard
Cordray sued and settled with Defendantover these very issues – and others. See Section II,
*infra*. The Court may take Judicial Notice of the fact that Dual-Tracking became such an
industry standard that Congress specifically outlawed it by way of CFPB Directives in 2013
before the Agency was basically gutted by the sitting U.S. President:

**Restricted Dual-Tracking:** Under the CFPB's new rules, dual-tracking – when the servicer
moves forward with foreclosure while simultaneously working with the borrower to avoid
foreclosure – is restricted. Servicers cannot start a foreclosure proceeding if a borrower has

20.   Note that licensed professionals at the National Consumer Law Center
       have reviewed this file and have determined that there was no legal way
       for such a foreclosure to occur because:

> "With this being a Taylor, Bean Whitaker loan using a MERS mortgage,
> they have a problem.  The two assignments, from MERS to B of A, and
> then from B of A to Carrington, are insufficient to get ownership of the
> mortgage, and thus standing to foreclose, to Carrington."

This was noted in a July 18, 2017, email from Thomas Cox, Esq. to HUD
Counselor, Jason Thomas (see Appendix B).

21.   Plaintiff is not aware as to how the case actually got to Trial on or about
       April 9, 2019, because she never received any Dispositive Motions or
       Memoranda from Respondent.  While it is unclear by the Order, she DID
       NOT ATTEND.

22.   Moreover, the Court refused to provide her with a public document that
       might explain some of the mystery, i.e. the initial Case Scheduling Order
       that is issued when every new case is filed.

23.   She does not have one, but based on information and belief, the Court
       does indeed issue one with every new case filing.  Upon requesting this
       document, the Court clerks instead asked her, "Why do you want that?"

24.   Further, she remains in the dark because all the while she had worked
       with industry professionals to comply with any and all requirements of
       the loan modification process with Carrington, a highly predatory and
       abusive company widely-known for consumer abuse as shall be noted in
       Section II, *infra*.

25.   Plaintiff complied on ***multiple occasions*** with document requests
       necessary to prosecute her RMA/HAMP application and hereby provides
       a sample of the documentation that was forwarded to Defendant by and
       through a HUD Counselor.

---

already submitted a complete application for a loan modification or other alternative to
foreclosure, and that application is still pending review.

26.   Defendant has steadfastly stonewalled Plaintiff throughout the entire RMA process in Bad Faith, commencing with their failure to even provide a valid fax number or email address for document submission before July of 2018, as noted in her correspondence with HUD Counselor, Jason Thomas, another well-known and well-respected industry professional.

27.   On September 27, 2019, HUD Counselor, Jason Thomas, contacted Defendant via telephone to follow up on the status of Plaintiff's loan modification application after having complied with yet another document request for updated signatures several weeks prior, only to be informed that the property had been foreclosed upon in April of 2019 and had subsequently been purchased by Defendant at auction in August of 2019.

28.   Plaintiff petitioned the Court for Reconsideration on October 1, 2019.

29.   Defendant immediately moved for a Writ of Possession on October 2, 2019.

30.   Meanwhile, at her wit's end, Plaintiff filed a complaint with the Maine Attorney General/Maine Bureau of Consumer Credit Protection on or about October 6, 2019.  On or about October 9, Chief Field Investigator, Edward Myslik, did respond thusly:

********

Myslik, Edward
Thu, Oct 10, 9:06 AM
to me

Dear Johanna:

Yes, it is very early in our process of investigating this complaint.

For your information, Carrington was notified in writing of the complaint within hours of receipt by the Bureau, and I have received a written acknowledgement from Carrington of receipt of the Notice of Complaint.

In the Notice of Complaint, Carrington was notified that the Bureau is requiring Carrington to cease any negotiations or sale of the property during the pendency of our investigation, which I can only assume will take quite a bit of time and energy to

complete.

Carrington was notified that the Bureau is requiring substantial documentation to evidence compliance with Maine law in all aspects of the foreclosure process and in all aspects of the loss mitigation process.

Yours,
Ed

**********

30.  Meanwhile, the CEO of Carrington Mortgage, Bruce Rose, called Plaintiff an
     "idiot" in an email response to her May 27, 2017, appeal:

May 27, 2017

To Whom It May Concern:

My name is Johanna R. Wheeler and my loan number is 6000003477.  This letter serves as my official appeal to the decision that was made by Carrington Mortgage Services to deny my loan modification request. ……

     "Chuck –

        **This idiot has been pestering us and I can't even sort out all of the details what she is referring to.**  Let's do two things here – solve whatever the current issue is ASAP and then get Ray to offer her a streamline refinance at whatever rate will incent her to refinance quickly, then sell her loan on a released basis into the market so that we are no longer dealing with her.  Please let me know your thoughts.
        BR"



Carrington CEO Bruce Rose

Plaintiff immediately replied and stated, "At least I know how to double check my recipients before sending an email, so who's the idiot now?!" Almost immediately following this contentious email interaction, Plaintiff started receiving phone calls from the office of the CEO in a paltry attempt at damage control, and Yadira Muniz, manager of Carrington's Customer Advocate Department, kept saying, "You weren't supposed to see that email."

Plaintiff retorted, "Oh, so you're basically saying that it's perfectly acceptable for your CEO to call a customer an idiot or any other derogatory names just as long as they don't see or hear it?" Following this, there was dead silence on the line as Ms. Muniz clearly had no response to this question!



31.    In the end, however, Defendant, in all of its hubris, continued asking Plaintiff for the same documents over and over again, i.e. updated signatures, bank statements, pay stubs, etc., etc. ad nauseam over the course of many months, all of which had already been submitted to them on **multiple** occasions:

From: **Jason Thomas** <Jason.Thomas@ceimaine.org>
Date: Mon, Aug 26, 2019 at 4:08 PM
Subject: Requested RMA, Wheeler/Athas, Loan# 6000003477
To: mortgageassistance@carringtonms.com <mortgageassistance@carringtonms.com>
Cc: Johanna Athas <jwemt81@gmail.com>
Please find attached the updated, new version of the RMA as requested in the ongoing review of:

Johanna Wheeler and Matthew Athas
36 Ruth Avenue
Hampden, ME 04444
Loan# 6000003477
Thanks in advance

# Jason Thomas
## Director, Housing Counseling and Education

Email:       Jason.Thomas@ceimaine.org
Tel:            207-504-5866
Housing Tel:  877-340-2649
Housing Fax:  207-504-5915
www.ceimaine.org

32.    Lastly, in cementing the blatantly nebulous nature of this purported loan, the MERS lookup webpage actually cites Bank of America as Servicer, even though they have not serviced this purported loan in YEARS (since 2014).

32.    To add insult to injury, Defendant continues to send requests for documentation to this day, as will be demonstrated at Trial.

---------- Forwarded message ---------
From: **Alicia Herrera** <Alicia.Herrera@carringtonms.com>
Date: Tue, Aug 6, 2019 at 4:41 PM

11

Subject: 6000003477
To: JWEMT81@GMAIL.COM <JWEMT81@gmail.com>

Dear Mortgagor(s),

CMS received an application requesting assistance from you and after careful review we have determined that additional information is needed to complete your application. A detailed letter is being sent to you that outlines what documentation is missing, outdated or incomplete; however if you call us today we can go over the information that is needed and help get your on your way to the Underwriting process. Please call us at 800-561-4567 Monday through Friday, 6 AM to 4PM PST. We look forward to assisting you!

**THIS EMAIL DOES NOT ACCEPT ATTACHMENTS SO DO NOT ATTEMPT TO SEND DOCUMENTS TO THIS EMAIL BOX.**

All documentation related to an application for assistance should be sent to MortgageAssistance@CarringtonMS.com

Thank you,
Alicia Acevedo – NMLS ID # 1064915
Home Retention Department Specialist

33.    **This is a National Pattern and Practice of Defendant and Respondent's background is replete with patterns and practice of corruption and deceit.**

i.    <u>Ohio:</u>

Richard Cordray, former Director of the CFPB, sued Defendant many years ago over these exact issues and the Settlement in Franklin County Court of Common Pleas was massive.

https://www.housingwire.com/articles/ohio-ag-carrington-settle-mortgage-servicing-suit/
Ohio AG, Carrington settle mortgage servicing suit
May 23, 2011, by Jon Prior

> In 2008, Carrington committed to make good faith efforts to provide more workouts after its servicing practices were called into question by the Ohio Attorney General.  In 2009, then Ohio Attorney General, Richard Cordray, and the Ohio Department of Commerce filed a joint complaint against Carrington Mortgage, alleging that it did not provide modifications in the state as required under that 2008 agreement.

> According to last week's settlement, Carrington will assign a single point of contact at the firm to work with borrowers who apply for a modification. The servicer will also implement a specific timeline for all requests and it will suspend the foreclosure process while a loan is being evaluated for a workout.  Internal reviews will also be set up for denied modifications. Carrington also agreed to provide relief to 60 Ohio homeowners that involve loans to which Carrington acquired the servicing rights to in 2007.

> > "Ohio consumers benefit from mortgage servicers that work proactively to avoid foreclosure.  This settlement will allow Ohio homeowners to benefit from higher standards of customer service and responsiveness," said Ohio Department of Commerce Director, David Goodman.

ii.    <u>Texas.</u>

In *Wolf. vs. Wells Fargo and Carrington,* the Jury issued a resounding statement against fraud as noted by Forensic Examiner, Marie McDonnell:

http://www.piggybankblog.com/2.0/wolf-vs-wells-fargo-wells-fargo-must-pay-5-4m-in-robosigning-foreclosure-row/

https://stopforeclosurefraud.com/2015/11/13/wolf-vs-wells-fargo-wells-fargo-must-pay-5-4m-in-robosigning-foreclosure-row/

A Texas state jury awarded nearly $5.4 million to a couple accusing Wells Fargo NA and others of "robosigning" documents that led to the wrongful foreclosure of their home, holding that the banking giant knew that documents supporting the foreclosure were fraudulent.

After 4 days of trial and just 4 hours of deliberation, the jury on Tuesday found that there was "clear and convincing evidence" that Wells Fargo and Carrington Mortgage Services, LLC knew that the supporting documents were a fraudulent claim on the property owned.  The jury awarded the Wolf's $190,000 in actual and emotional distress damages, $190,000 in attorneys' fees, and $5 million in punitive damages to be paid equally by Wells Fargo and Carrington Mortgage.

To wit:

### *QUESTION NO. 1*
*Did any defendant make, present, or use a document with:*

1. *knowledge that the document was a fraudulent lien or claim against real property, or an interest in real property; and*

2. *the intent that the document be given the same legal effect as a valid lien or claim against real property, or an interest in real property; and*

3. *the intent to cause the Plaintiffs to suffer financial injury or mental anguish or emotional distress?*
*A lien is "fraudulent" if the person who files it has actual knowledge that the lien was not valid at the time it was filed.*
*"Lien" means a claim in property for the payment of a debt and includes a security interest.*
*Answer "Yes" or "No" as to the following:*
**Wells Fargo:  YES**

**Carrington:   YES**

iii.    <u>Florida</u>.

In *Marchisio vs. Carrington*, No. 17-10584 (11 Cir. March 25, 2019) the 11th Circuit expressly overruled the District Court's findings that homeowner Plaintiffs were not entitled to Punitive Damages after Carrington abused them after a foreclosure that was probably tainted in the first place:

B. The First Federal Action

1. Partial Correction by Defendant - In response, in July of 2012, Plaintiffs filed an action in the United States District Court for the Southern District of Florida, Case No. 12-cv-14264-DLG, alleging, among other things, that Defendant violated the FCRA and the Florida Collections Act.  In this First Action, Plaintiffs complained that, despite the state court order, Defendant continued to seek payment on the discharged mortgage and falsely reported to credit reporting agencies that the debt was delinquent.  During this First Action, Defendant corrected its misreporting of the first loan by sending an automated universal dataform ("AUD") to the credit reporting agencies, requesting that they update the first loan to reflect that it had a zero balance effective December 31, 2009, but Defendant continued to misreport that Plaintiffs owed money under the second loan.

2. The Release and Settlement Agreement - The parties resolved the First Action, entering into a "Release and Settlement Agreement" on January 23, 2013.  It is this settlement agreement that Plaintiffs now contend Defendant breached.  In exchange for dismissal of the district court action, Defendant agreed to (1) pay Plaintiffs $125,000 and (2) "report the Second Loan as having a zero balance as of December 9, 2009, to the same agencies and in the same fashion as it reported the first loan, which reporting shall be done as soon as reasonably possible, but in any case, within 90 days."  The parties agreed that "in the event of a material breach hereunder, the prevailing party in any action commenced to enforce [the] Agreement shall be awarded its reasonable attorneys' fees, expenses, and costs."  The parties acknowledged that "time is of the essence in the performance of the obligations of this Agreement."

3. Post-Settlement Activity - Despite a settlement agreement that should have resolved all outstanding issues, Plaintiffs continued to be plagued by Defendant's failure to accurately report extinguishment of the second loan.  Given Defendant's intransigence, Plaintiffs were forced to file a second lawsuit to prompt Defendant to cease falsely reporting Plaintiffs' debt.

......things continued downhill from there, but that's enough to give the Court a good view into the abusive pattern and practices of Respondent:  They will get you in any which way they can:

> Assuming arguendo that Defendant's continued reporting of false information regarding Plaintiffs' debt was not intentionally done, the question then is whether Defendant acted in reckless disregard of its obligations under the FCRA, as the district court concluded.  On the record before us, it clearly did so (at 20).

> After careful review and with the benefit of oral argument, we: (1) affirm the district court's finding of a willful FCRA violation, but reverse the court's denial of emotional distress and punitive damages; (2) reverse the grant of summary judgment for Defendant on the Florida Collections Act claim; (3) reverse the grant of summary judgment for Defendant on the breach of contract claim; (4) vacate the award of attorney's fees to Plaintiffs so that the district court can recalculate those fees at the conclusion of the litigation; 1 and (5) remand for proceedings consistent with this opinion (at 4).

iv.   <u>West Virginia</u>.

In West Virginia, Carrington faced a lawsuit – much as they are facing one here – and wisely decided to settle the case.  This time, it was predatory lending relating to a grossly inflated valuation of the home of Plaintiff's parents incident to a predatory loan the violated all tenets of basic LTV principles, i.e. $85,000.00 vs. $15,000.00.  Sadly, Carrington may fairly be seen to provide a seamless web of deceit, abuse, and corruption in all aspects of home financing.

According to Pacer Monitor on October 16, 2019, the Parties in *Kelly Jo Young v. Carrington* 2:19-cv-00391 (West Virginia 2019) are engaged in final Settlement negotiations, to wit:

> ORDER WITHDRAWING MOTION TO DISMISS AND STAYING CASE granting17 Notice of Withdrawal of their Motion to Dismiss Plaintiff's Complaint and Consent Request to Stay Deadlines; Defendants'6 Motion to Dismiss the Plaintiffs Complaint is withdrawn; all deadlines in this matter shall be stayed for a period of 30 days following the date of this Order while the parties finalize their settlement of this matter.  Signed by Judge Joseph R. Goodwin on **10/16/2019**.

v.     <u>Virginia.</u>

This is another apparent settlement.  Dana Hawes filed a Class Action lawsuit against Bank of America and Carrington in *Hawes v. Bank of America et al.*, 3:17-cv-00346 (Virginia, February 3, 2018):

Bank of America, N.A. and Carrington Mortgage Services, LLC are facing a Virginia consumer's proposed class action claiming the companies broke the law by wrongfully foreclosing on his home without satisfying certain conditions precedent to foreclosure in the man's deed of trust.  According to the lawsuit, the plaintiff's deed of trust, which was insured by the Federal Housing Administration (FHA), mandated a face-to-face meeting between the man and the defendants **before** foreclosure could take place on his home. Further, the lawsuit claims that Carrington Mortgage violated the Real Estate and Settlement Procedure Act (RESPA) with its alleged failure to follow certain mandatory steps after receiving the plaintiff's complete mortgage assistance application at least 37 days before the foreclosure sale.

"As a matter of policy and common practice, [the defendants] made absolutely no effort to arrange a face-to-face meeting with [the plaintiff] or the putative class before 3 full monthly installments due on the mortgage are unpaid," the case claims.  "Moreover, consistent with its policy not to conduct face-to-face interviews, [the defendants] never made a trip to [the plaintiff's] home, where its intent was to provide loss mitigation services within this timeframe."

[So Ordered re50 Stipulation of Dismissal filed by Carrington Mortgage Services, LLC, Bank of America, N.A. Signed by District Judge M. Hannah Lauck on 02/13/2018. (tjoh, )]

[STIPULATION of Dismissal and Consent Order by Bank Of America, N.A.,, Carrington Mortgage Services, LLC,. (Rose-Smith, Sabrina)]

vi.     <u>Massachusetts.</u>

**Saugus Family at Risk of Foreclosure Due To 'Immoral, Outrageous' Behavior By Carrington Mortgage**
https://fraudstoppers.org/saugus-family-risk-foreclosure-due-immoral-outrageous-behavior-carrington-mortgage/

**Fraudstoppers July 12, 2017**

The family's home loan was sold to a servicer called Carrington Mortgage, who Kelly says was incredibly difficult to communicate with as she tried to avoid foreclosure on her Saugus home of eight years.

"We couldn't get them to talk to us," Kelly told KHTS last week, with a foreclosure date of July 17 looming over her. "They were telling us they had no records of our stuff; they had no payments, (but) they weren't sending us payment notices.  It was really just confusing."

When all hope seemed lost, what Kelly called a "godsend" came into their lives: the help of a Santa Clarita realtor who provides free loan modification and foreclosure defense services to the public.

<u>Rich Szerman</u> of Alta Realty Group promptly got to work on submitting a loan modification request to Carrington Mortgage, and quickly realized this seemingly simple task would be nearly impossible.

While Szerman claims he's been attempting to submit the Kinneys' completed file since May 15, Carrington officials have allegedly put up obstacle after obstacle, ranging from losing paperwork to requiring a "special code" that no one seemed to know before any action could be taken.

"They have lied and cheated and done everything they possibly can to avoid doing this loan modification since the day we got the file," Szerman said.

https://www.youtube.com/watch?v=PveBv-XQ1QE



## CLAIMS AND PRELIMINARY INJUNCTION DEMAND

34. Defendant's actions have continued during the period of this litigation, with ongoing threat to unlawfully divest Plaintiff of her Property Interests.

35. Defendant currently holds a Writ of Possession that was obtained pursuant to a Hearing, for which Plaintiff was not Noticed nor Present.

36. The actions of Defendant have caused and will imminently cause Plaintiff and her spouse **substantial irreparable harm**. Said irreparable harm includes the loss of title to their beloved home of 12 years, anticipated possession of their home, and ongoing extreme emotional distress that cannot be adequately compensated at law.

37. Plaintiff has a substantial likelihood of success on the merits to set aside the sale of her home based on the documentary evidence available to date, including the fact that Defendant cannot demonstrate a clean or valid Chain of Title, nor can it refute Plaintiff's claims regarding unlawful Dual-Tracking as she had completed several Loss Mitigation packages that all went completely ignored.

38. A Preliminary Injunction is necessary in order to maintain the status quo until Plaintiff's claims for the set aside of any potential foreclosure sale can be fully and finally determined.

39. A balance of the equities favors a Preliminary injunction to maintain the status quo. Defendants are not prejudiced to any material extent by the passage of time in waiting for a full and final adjudication of the action concerning any potential sale and entry. By contrast, Plaintiff would be prejudiced, irreparably injured, and her claims would become moot if she is evicted or otherwise dispossessed from her home in the absence of an injunction.

WHEREFORE Johanna R. Wheeler hereby demands:

a. That this Court restrain and enjoin Defendant from conveying title until the claims for set aside of the foreclosure sale have been determined by the Court.

b. That this Court restrain and enjoin Defendant from evicting or in any other way dispossessing Plaintiff or her family and invitees from the property, or

taking any action to interfere with her quiet enjoyment of the property until the claims for set aside of the foreclosure sale have been determined by the Court.

c.   That upon final judgment, this Court prohibit any foreclosure sale.

d.   That the Court provide access to a Jury to determine claims for Breach of Contract.

e.   That the Court provide access to a Jury to determine claims for Promissory Estoppel.

f.   That the Court provide access to a Jury to determine claims for Breach of the Covenant of Good Faith and Fair Dealing.

g.   That the Court provide access to a Jury to determine claims of Intentional Infliction of Emotional Distress.

h.   That the Court provide access to a Jury to determine claims of negligent Infliction of Emotional Distress.

i.   That the Court provide access to a Jury to determine claims for Wrongful Foreclosure.

j.   That the Court provide access to a Jury to determine claims for Unlawful Dual-Tracking pursuant to the Homeowner Bill of Rights (HBOR).

k.   That the Court provide access to a Jury to determine claims for violation of Business & Professions Code section 17200 for unlawful and deceptive practices.

l.   That the Court award actual damages, punitive damages, court costs, attorney fees, expert fees, and any and all other relief as deemed appropriate.


JURY DEMAND


Plaintiff hereby requests this Cause be heard by a duly-empaneled Federal Jury.


Johanna R. Wheeler
Plaintiff, Pro Se

21

Respectfully submitted,

Johanna R. Wheeler
Plaintiff, Pro Se

Appendix B

WHEELER, JOHANNA

## Jason Thomas

| | |
|---|---|
| **From:** | Thomas Cox <tac@gwi.net> |
| **Sent:** | Tuesday, July 18, 2017 2:09 PM |
| **To:** | Jason Thomas |
| **Subject:** | Re: Taylor Bean Whitaker Mortgage |

Jason,

With this being a TBW loan using a MERS mortgage, they have a problem.   The two assignments, from MERS to B of A, and then from B of A to Carrington, are insufficient to get ownership of the mortgage, and thus standing to foreclose, to Carrington.

All of the recent declaratory judgment decisions regarding the MERS issue have been going our way, and I cannot see how Carrington is going to get the assignment that it needs from whatever successor to TBW there may be.  It would be awfully smart for Carrington to just find a way to modify this loan, because this think could be otherwise  stymied for a long time.

Give me a call if you have more questions.


Tom

Thomas A. Cox, Esq.
P.O. Box 1314
Portland, Maine 04104
(207) 749-6671
tac@gwi.net

> On Jul 18, 2017, at 1:29 PM, Jason Thomas <Jason.Thomas@ceimaine.org> wrote:
>
> Tom,
>
> It slipped my mind when we met in Yarmouth last week, but I have a client who's mortgage I wondered if you might look at briefly. I am attaching it here along with the 2 subsequent assignments to BOA and Carrington. We had been attempting to assist her with a loan mod, but she has been deemed ineligible as she has had a recent one and is not again eligible until 10/2017. However, based on the length of time in her delinquency and Carrington's lack of beginning a foreclosure action I was curious if the servicer here may believe there are some issues with the mortgage. It was a Taylor, Bean and Whitaker origination in 2008, assigned to Bank of America via MERS in 2012, and again to Carrington in 2015. Any insight would be greatly appreciated.
>
> Thanks as always!
>

**Jason Thomas**
Director, Housing Counseling and Education
Email: Jason.Thomas@ceimaine.org

<image69d29b.JPG>
30 Federal St
Brunswick, Maine 04011

1